# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| JASON MANESS | Case No.: 1:12-cv-00163-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security | |
| Respondent. | |

Now pending before the Court is Jason Maness's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits.  The action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

On July 11, 2008, Jason Maness ("Petitioner") filed an application for Disability and Disability Insurance Benefits, alleging a disability onset date of February 20, 2003 (later amended to June 29, 2008).  Petitioner's claim was initially denied on September 25, 2008 and, again, on reconsideration on December 8, 2008.  On January 29, 2009, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ").  On May 28, 2010, ALJ Lloyd E. Hartford held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney

**MEMORANDUM DECISION AND ORDER - 1**

Merrick Jackson, appeared and testified.  An impartial vocational expert, Polly Peterson, Ph.D., also appeared and testified.

On October 18, 2010, the ALJ issued a decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act.  Petitioner timely requested review from the Appeals Council on November 10, 2010.  On February 2, 2012, the Appeals Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely files the instant action, arguing that the ALJ erred (1) by failing to properly evaluate Petitioner's diabetes, including gastroparesis and hypoglycemic unawareness ; (2) in evaluating the opinions of Petitioner's treating physician, David A. Ballance; and (3) in rejecting Petitioner's credibility.  *See* Pet.'s Brief, p. 2 (Docket No. 13).  Petitioner therefore requests that the Court reverse the ALJ's decision or, alternatively, remand the case for further proceedings.  *See* Pet. for Review, pp. 3-4 (Docket No. 1).

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

**MEMORANDUM DECISION AND ORDER - 2**

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

## III.  DISCUSSION

**A.      Sequential Processes**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since June 29, 2008, the amended alleged onset date.  (AR 14).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

**MEMORANDUM DECISION AND ORDER - 4**

An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe impairments: (1) diabetes mellitus; (2) history of a broken hip; and (3) osteoporosis.  (AR 14-15).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id.*  Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  (AR 15).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that

**MEMORANDUM DECISION AND ORDER - 5**

disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual functional capacity to perform unskilled, sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), and: (1) can occasionally lift 10 pounds, and frequently lift less than 10 pounds; (2) is able to stand and/or walk for at least two hours in an 8-hour workday with normal breaks; (3) is able to sit for up to six hours in an 8-hour workday with normal breaks; (4) can occasionally climb ramps or stairs, but can never climb ladders, ropes, or scaffolds; (5) can frequently balance, stoop, kneel, crouch, or crawl; (6) has no manipulative, visual, or communicative limitations; (7) has no limitation on his ability to perform push/pull motions with either his upper or lower extremities; (8) must avoid concentrated exposure to extremes of heat and cold, and to vibration; (9) should avoid all exposure to hazards such as uncovered moving machinery and unprotected heights. (AR 15-23). Due to these limitations, the ALJ further concluded that Petitioner is unable to perform any past relevant work. (AR 23).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, the ALJ found that Petitioner is capable of performing unskilled, sedentary work found in significant numbers within

**MEMORANDUM DECISION AND ORDER - 6**

the relevant national/regional economy, including document preparer, food and beverage order

clerk, and addresser.  (AR 24).  Therefore, based on Petitioner's age, education, work experience,

and residual functional capacity, the ALJ concluded that Petitioner was not under a disability as

defined in the Social Security Act since February 29, 2009, the date his application was filed.

(AR 23-25).

**B.     Analysis**

  1.     <u>The ALJ's Evaluation of Petitioner's Gastroparesis and Hypoglycemic
         Unawareness</u>

Petitioner argues that the ALJ failed to consider two specific impairments that further

complicate his diabetes – namely, (1) gastroparesis and (2) hypoglycemic unawareness.  *See*

Pet.'s Brief, pp. 7-10 (Docket No. 13).  Petitioner infers that, had the ALJ properly evaluated

these conditions, his limitations would actually be more restrictive than those found by the ALJ

in his RFC assessment.  *See id*.  The undersigned disagrees.

There is no question that, part and parcel with his diabetes, Petitioner simultaneously

suffered/suffers from gastroparesis and hypoglycemic unawareness.  However, other than

pointing to several instances in the record (the majority of which *preceded* Petitioner's June 29,

2008 onset date (*see id*. at pp. 8-9)) referencing these conditions,[1] Petitioner points to no

---

[1]  For example, with respect to gastroparesis, Petitioner argues that, "[m]ost notably, [he]
underwent a gastric emptying study which confirmed that he had gastroparesis."  *See* Pet.'s Brief,
p. 8 (Docket No. 13).  However, the referenced study took place on September 24, 2003 – over
*five years* before his onset date.  (AR 769).  With respect to hypoglycemic unawareness,
Petitioner devotes the majority of his argument to a March 6, 2009 treatment note from
endocrinologist, Dr. Julie Foote.  *See* Pet.'s Brief, p. 9 (Docket No. 13).  Even though this
episode followed Petitioner's onset date, Dr. Foote noted that Petitioner apparently still "works
the night shift three days a week" – despite Petitioner's hypoglycemic unawareness.  (AR 976).
Moreover, as the ALJ points out, notwithstanding Petitioner's diabetes (and, presumably,
gastroparesis and hypoglycemic unawareness) Dr. Foote "never opined that Petitioner was unable
to perform gainful activity." (AR 22); *see also* (AR 53) (Petitioner testifying that no doctor has
told him he cannot work more than part-time).

**MEMORANDUM DECISION AND ORDER - 7**

evidence suggesting that they contribute to any greater functional limitations than the ALJ

separately assessed relative to Petitioner's diabetes.[2]  In other words, without more, Petitioner's

mere recitation of undisputed conditions correlating to his diabetic impairment is not enough.

Instead, Petitioner must finish connecting the causation dots; he must show that his gastroparesis

and hypoglycemic unawareness result in physical limitations not already subsumed by the ALJ's

consideration of Petitioner's diabetes and corresponding RFC assessment.  *See, e.g.*, *Bigpond v.

Astrue*, 280 Fed. Appx. 716, 718 (10th Cir. 2008) ("Although [the petitioner] recites what these

records say, she does not explain how they show that her cardiac problems made her unable to

engage in any substantial gainful activity . . . .").[3]  Simply put, the offered medical evidence does

not support such an argument.

      2.     <u>Dr. Ballance's Opinions</u>

The ALJ rejected the medical opinion suggesting that Petitioner maintained a covered

disability, even though that opinion originated from Petitioner's treating physician, Dr. Ballance.

The ALJ relied instead on the objective medical evidence of record, including evidence from

Petitioner's other medical providers.  (AR 22)

Opinions of treating physicians are entitled to greater weight than the opinion of a non-

examining physician.  *See Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v.

Heckler*, 753 F.2d 1450 (9th Cir. 1984).  The treating physician's opinion is given that deference

---

[2]  For instance, at the beginning of the May 28, 2010 hearing, Petitioner's attorney highlighted the focus of Petitioner's claim, stating: "So we're looking at main impairments of diabetes and the osteoporosis, which has resulted in fractures before."  (AR 29).

[3]  To the extent Petitioner argues that the ALJ's RFC assessment is incorrect in light of the testimony of his treating physician, Dr. Ballance, or his own testimony, those arguments are addressed later within this Memorandum Decision and Order.

**MEMORANDUM DECISION AND ORDER - 8**

because "he is employed to cure and has a greater opportunity to know and observe the individual." *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  However, a treating physician's opinion is not necessarily conclusive.  *See id*. at 762.  The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *See Pitzer*, 908 F.2d at 506.  Even if the opinion of an examining doctor is contradicted by another doctor, it can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinions is a sufficient reason for rejecting that opinion.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

On April 1, 2010, Dr. Ballance completed a "Residual Functional Capacity Questionnaire," discussing the effects of Petitioner's Type 1 diabetes, gastroparesis, neuropathy, nephropathy, coronary artery disease, osteoporosis, and testicular cancer.  (AR 952-954).  Based on the record, Dr. Ballance apparently saw Petitioner six times before completing the questionnaire – January 26, 2009, February 23, 2009, May 26, 2009, June 10, 2009, July 16, 2009, and October 9, 2009.  (AR 963-987).  The questionnaire indicated that Petitioner (1) needed to recline or lay down during a hypothetical eight-hour work day for more than the typical 15-minute break in the morning, the 30-60 minutes for lunch, and the typical 15-minute break in the afternoon; (2) could sit for 15 minutes at a time for up to two hours in an eight-hour workday; (3) could stand/walk 15 minutes at a time for up to two hours in an eight-hour workday, but only about a city block; (4) needed to take unscheduled, 15-30 minute breaks every one to two hours;

**MEMORANDUM DECISION AND ORDER - 9**

(5) can never lift more than 20 pounds; and (6) would be absent from work more than four times a month.  (AR 952-953).

Dr. Ballance's simultaneous assessment that Petitioner experienced these same limitations since August 2006 (AR 954)[4] casts an initial pall over the entirety of his opinions. There is no evidence suggesting a doctor–patient relationship between Petitioner and Dr. Ballance before January 26, 2009 (*see supra*), and Petitioner's work history and physical activity during this interim period of time are seemingly at odds with such extreme limitations and restrictions.  Specifically, Petitioner's June 29, 2008 onset date compromises Dr. Ballance's opinion that Petitioner experienced such limitations and restrictions two years (or four years, if considering Dr. Ballance's February 23, 2009 questionnaire) before then.[5]

More substantively, the substance of Dr. Ballance's opinions is not universally shared by Petitioner's other medical providers.  For example:

- Non-examining physician, Leslie E. Arnold, M.D., reviewed Petitioner's medical records and, on September 25, 2008, concluded that he could perform sedentary exertion work, given that Petitioner (1) could stand and/or walk (with normal breaks) at least two hours in an eight-hour work day and could sit (with normal breaks) about 6 hours in an eight-hour work day; (2) had no push/pull limitations; (3) could frequently balance, stoop, kneel, crouch, and crawl, while occasionally climbing ramps/stairs, but never a ladder, rope, or scaffolds; (4) had no manipulative, visual, or communicative limitations.   (AR 21-22) (citing (AR 771-778)).

- Neither Petitioner's cardiologist, Dr. Rasmussen, nor Petitioner's endocrinologists, Dr. Foote and Dr. Roosevelt, ever opined that Petitioner

---

[4]  Dr. Ballance completed a similar questionnaire on February 23, 2009, having seen Petitioner only once before that time.  (AR 783-785).  Therein, Dr. Ballance indicated that Petitioner experienced nearly identical limitations for the past five years or more.  (AR 785).

[5]  Additionally, as the ALJ notes, nowhere in the questionnaire does Dr. Ballance assign Petitioner's alleged limitations/restrictions to Petitioner's various diagnoses.  (AR 22).

**MEMORANDUM DECISION AND ORDER - 10**

was unable to work full-time.  (AR 22); (AR 53) (Petitioner testifying that no doctor has indicated that he cannot work more than part-time).

- On July 14, 2008, Petitioner's orthopedic surgeon, Dr. Stanley J. Waters advised Petitioner that "it is essential that he be walking at least 20 minutes, or one mile, a day to improve his bone density." (AR 480). On November 21, 2008, Dr. Waters indicated that Petitioner "has not been compliant with his strengthening program" even though he has "suggested aggressive strengthening." (AR 933). On December 31, 2009, Dr. Waters sent Petitioner "for physical therapy with Dave Anderson for core strengthening and a general cardiovascular fitness program." (AR 932).[6]

Simply put, Dr. Ballance's April 1, 2010 input concerning Petitioner's physical limitations over time does not mesh with the balance of the medical evidence.

There is no question that Petitioner suffers from several severe impairments (acknowledged by the ALJ (*see supra*)) that no doubt impact his ability to work; however, it cannot be said, as Petitioner's counsel does, that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Ballance's opinions.  The incongruity between Dr. Ballance's questionnaire responses and other evidence in the record represents a specific and legitimate reason for rejecting his opinion of Petitioner's limitations.  *See* Pet.'s Brief, pp. 14-18. *See Magallanes*, 881 F.2d at 751 ("The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.").  While Dr. Ballance's assessments may not have been given the weight Petitioner would have preferred, they were not given independent of the surrounding medical record or the applicable standards of law.  That is, in addition to Dr. Ballance's opinions being internally inconsistent, they are contradicted by other medical providers.

_____

[6] On December 23, 2009, Jean Rohrer, CRNP, saw Petitioner for (among other things) Type 2 diabetes, noting that he "denies any symptoms" and "feels well from a cardiovascular standpoint." (AR 962).

**MEMORANDUM DECISION AND ORDER - 11**

At this stage of the proceedings it is not this Court's duty to resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations.  Rather, this Court must decide whether the ALJ's decision that Petitioner is not disabled is supported by the record.  There are conflicting medical opinions and treatment notes inconsistent with ultimate opinions.  In that setting, the ALJ is justified in offering specific and legitimate reasons, supported by substantial evidence in the record, to reject or give lesser weight to some or all of Dr. Ballance's medical opinions.  *See supra*.  Because the evidence can reasonably support the ALJ's conclusion in this respect, this Court will not substitute its judgment for that of the ALJ's.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

3.    Petitioner's Credibility

Petitioner also takes issue with the ALJ's conclusion that Petitioner's statements concerning the intensity, persistence, and limiting effects of his symptoms are not credible.  *See* Pet.'s Brief, pp. 10-14 (Docket No. 13).  As the trier of fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight.  *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990).  In evaluating a claimant's credibility, the ALJ may consider claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms.  *See Light v. Social Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997).  In short, "[c]redibility decisions are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  It should be noted, however, that to reject a claimant's testimony, the ALJ must make

**MEMORANDUM DECISION AND ORDER - 12**

specific findings stating clear and convincing reasons for doing so.  *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

At the administrative hearing, Petitioner testified that, due to his diabetes and osteoporosis, he gets fatigued and tired to the point that he has difficulty walking, standing, and bending over – on bad days (three to four times per week), Petitioner can only "lay[ ] back in a recliner watching TV and lay[ ] in bed."  (AR 36-37, 40, 54-55).  The ALJ ultimately discounted Petitioner's testimony, finding that "the extent of impairment alleged by [Petitioner] is not supported by the medical record on the whole."  (AR 21).

It is true that the objective medical evidence can be interpreted to cut against Petitioner's subjective statements of the debilitating pain he suffers (*see supra*); however, that is not enough to reject outright Petitioner's complaints.  *See, e.g.*, *Marshall v. Heckler*, 731 F.2d 555 (8th Cir. 1984) (ALJ may not reject subjective complaints solely because of lack of objective medical evidence).  The pertinent regulation, SSR 96-7p, requires that in addition to the objective medical evidence, the ALJ must consider the following factors in evaluating a claimant's credibility:  (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or ha taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  *See* SSR

**MEMORANDUM DECISION AND ORDER - 13**

96-7p, 1996 WL 374186, *3; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).  Here, the ALJ's

consideration of Petitioner's credibility does not speak to these factors *per se*; instead, the ALJ

discounts Petitioner's credibility for what appears to be four separate reasons: (1) Petitioner fails

to follow a prescribed diet; (2) no single hypoglycemic episode has occurred in more than two

years; (3) the medical records do not support Petitioner's statements that he suffered from either

diabetic neuropathy or vision problems; and (4) there are no cardiovascular impediments toward

following Dr. Waters's advice.  (AR 21).  The Court finds the ALJ's treatment of this issue

inadequate as a matter of law.

First, while Dr. Foote indicated on March 6, 2009 that Petitioner's diabetes "has been

difficult to control" and that Petitioner "does not count carbohydrates"  (AR 976), as of October

20, 2009, Petitioner was "counting carb[s] and . . . keeping a written logbook!" (AR 937) per Dr.

Foote's earlier instruction (AR 977).  Along these lines, at the May 28, 2010 administrative

hearing, Petitioner testified that, relative to his diabetic diet, he is "doing the best [he] can," is

"following it," and "eat[s] the right foods."  (AR 52, 54).  Absent record evidence to the contrary

(the ALJ and Respondent offer none), the ALJ has no support to conclude that, by merely "doing

his best" Petitioner is not also "forcing himself to comply with medical restrictions as to diet and

nutrition in order to improve his condition."  (AR 21).  The ALJ's position on this point does not

operate as a convincing reason to reject Petitioner's credibility.

Second, the ALJ states on at least four separate occasions that, consistent with Dr.

Ballance's treatment notes, Petitioner has not suffered a hypoglycemic episode since February

2008.  (AR 20-23).  However, this is not true, when considering that, as Petitioner argues, the

**MEMORANDUM DECISION AND ORDER - 14**

record clearly shows that Petitioner experiences large swings in his blood sugar levels and that not all of Petitioner's hypoglycemic episodes require hospitalization or paramedics.  *See* Pet.'s Brief, p. 12 (Docket No. 13).  Regardless, Dr. Foote referenced in March 2009 that Petitioner's "last paramedic visit was a couple of months ago for a low blood sugar."  (AR 976).  The ALJ's position on this point does not operate as a convincing reason to reject Petitioner's credibility.

Third, it is unclear where in the record Petitioner himself discusses the severity of either his diabetic neuropathy or vision problems as the ALJ suggests.[7]  Still, the medical record contains references to both instances.  (AR 485) ("[Petitioner] clearly had decreased sensation to light touch, pinprick and vibratory sense to approximately 4 cm. above the ankle bilaterally, consistent with bilateral diabetic peripheral neuropathy.");[8] (AR 980-984) (discussing Petitioner's background diabetic retinopathy, albeit "minimal").  Even if such evidence could reasonably be considered "conflicting," and thus calling into question Petitioner's neuropathy and/or vision issues (if any), such an assessment of the record operates not as black mark on Petitioner's credibility, but as a to challenge to any associated diagnoses in those respects.  The ALJ's position on this point does not operate as a convincing reason to reject Petitioner's credibility.

---

[7] According to the ALJ, to meet or equal Listing § 9.08 (diabetes mellitus), Petitioner "must present evidence of the initial diagnosis of diabetes with either neuropathy . . . in two extremeties resulting in sustained disturbance of gross and dexterous movements, or gait and station; acidosis at least once every two months; or retinities proliferans . . . ."  (AR 15).  Except, here, Petitioner does not challenge the ALJ's decision that his impairments do not equal a listed impairment.

[8] Moreover, even though the ALJ "agree[ed] and accord[ed] controlling weight to Dr. Arnold's opinion," he disregarded her elaboration on Petitioner's environmental limitations when addressing this apparent aspect of Petitioner's credibility: "The [Petitioner] should avoid concentrated exposure to extreme cold and heat *due to neuropathy present in both feet*."  (AR 775) (emphasis added).

**MEMORANDUM DECISION AND ORDER - 15**

Fourth, the fact that Petitioner's medical providers recommend that Petitioner become more, rather than less, active speaks more to his RFC (and the validity of any medical provider's opinion on Petitioner's RFC (*see supra*)) than his credibility.  Yet, to the extent Petitioner's failure to participate in such activity impacts his credibility, the undersigned agrees with Petitioner that the recommended physical therapy (what Dr. Waters prescribed) is distinct from physical activity and/or the ability to perform work.  Further, that Petitioner may not be able to perform physical therapy as a result of his physical impairments comports, rather than detracts, from his testimony concerning his physical abilities.[9]  The ALJ's position on this point does not operate as a convincing reason to reject Petitioner's credibility.

Despite many of the reasons the ALJ gave for discrediting Petitioner's credibility not being well-supported by the record, as with Petitioner's alleged disability (*see supra*), it is not for this Court to resolve the question of Petitioner's credibility; rather, it is tasked with reviewing the basis of the ALJ's decision on that issue.  Under that standard of review, and even though Petitioner may very well not be disabled, to the extent that the ALJ's decision upon that ultimate issue was drawn in whole or in part from his credibility determination (AR 21), the specific rationale offered for questioning Petitioner's credibility is not clear and convincing.  The action is therefore remanded to allow the ALJ to revisit this discrete issue and, in turn, determine its effect, if any, on Petitioner's disability determination.

---

[9]  Had the ALJ contrasted Petitioner's participation in certain activities with his simultaneous inability to engage in physical therapy, Petitioner's credibility would appropriately be questioned.  However, there is no such evidence – Respondent's reference to Petitioner's hunting trip in October 2006 (*see* Resp.'s Brief, p. 8 (Docket No. 15) (citing (AR 422)) as somehow compromising Petitioner's credibility ignores the fact that the trip preceded Petitioner's broken hip and, importantly, the June 29, 2008 onset date.

**MEMORANDUM DECISION AND ORDER - 16**

## IV. <u>CONCLUSION</u>

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

As to the ALJ's consideration of Petitioner's gastroparesis and hypoglycemic unawareness, and Dr. Ballance's opinions concerning Petitioner's alleged physical condition, the evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation by others.

However, the reasons given by the ALJ in support of his determination that Petitioner's complaints are not fully credible are not sufficiently clear and convincing and, therefore, not supported by substantial evidence in the record.  It is for this reason that it is necessary to remand this action for further consideration by the ALJ.

## V. <u>ORDER</u>

Based on the foregoing, Petitioner's request for review is GRANTED.  The Commissioner's decision that Petitioner's subjective complaints are not credible is not sufficiently clear and convincing; therefore, this matter is remanded pursuant to sentence four of

///

///

///

**MEMORANDUM DECISION AND ORDER - 17**

42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED:  **September 9, 2013**



Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**